Williams, Judge,
delivered the opinion of the court:
The plaintiffs, Joseph Silverman and Samuel Silverman, copartners, trading under the firm name of the Star Trading Company, bring this suit to recover the sum of $10,001.00 allowed by the local Board of Sales Control of Boston, Mass., as a refund on the purchase price paid by them for 10,001 pairs of shoes purchased at a sale of surplus war supplies held by the War Department under the authority of the acts of July 9,1918, and of July 11,1919.
The shoes were offered for sale in Clothing and Equipage Fixed Price List No. 9, issued by the surplus property division of the Quartermaster General’s Office, dated July 13, 1920.
Item C-934 of this list reads as follows :
“ 95,104 pairs of shoes, field, metallic fastened, with hob nails and toe plates, new. (See cut, style No. 1.) Price per pair, $3.60. (See quantity prices.) Various manufacturers. Packed approximately 24 prs. to case. Approximate weight, 125 pounds, sizes, 1% to 12. Widths B to EE. Minimum order accepted, 250 pairs. Stored at Boston, Mass. Spd 16990 CE.”
The price list further provided:
“ In presenting these shoes at the fixed prices named a splendid opportunity is afforded to purchasers to buy from this offering in quantities to suit their requirements * * *..
* * * * t-
*594 “ Guaranties to deliver certain or specific sizes from any one lot can not be given, but where one or more buyers purchases any one lot an attempt will be made, where feasible, to give to each purchaser a fair assortment of sizes as listed in the description of each lot.
S: * * * *
“ Goods may be left in storage at purchaser’s risk for a period of 30 days after confirmation of sale, but at that time, if not sooner, all purchases must be removed and the sale completed by the payment in cash of the remainder due on the transaction.”
On July 29, 1920, the plaintiffs bid upon 10,001 pairs of shoes described in said item C-934 at a unit price of $2.88 per pair and deposited with such bid their certified check for $2,880.28. On August 6,'1920, the depot quartermaster notified plaintiffs that their bid for 10,001 pairs of shoes had been accepted. The balance of the purchase price was paid by the plaintiffs in two installments, as follows:
August 24, 1920_§3,456.00
September, 1920_ 22, 466.60
The total number of shoes purchased by the plaintiffs was duly delivered, the last consignment being shipped October 28, 1920.
Thereafter, on April 4, 1922, the plaintiffs filed a claim with the surplus property division at Boston for a refund of $1.50 per pair upon the whole number of shoes purchased and received, upon the ground that plaintiffs had not received a fair assortment. On May 19, 1922, the local board of sales control of Boston found that a refund of $1.00 per pair on the 10,001 pairs would be fair and reasonable, and authorized a refund to the plaintiffs of the sum of $10,001.00.
On May 24, 1922, the plaintiffs accepted the said terms of settlement and signed and returned to the Boston Local Board of Sales Control their voucher for the same. The matter of the payment of the voucher was referred to the Comptroller General by the disbursing officer of the War Department, and on July 25, 1922, the Comptroller General decided (2 Comp. Gen. 55) that, the local board of sales control was without authority to grant the plaintiffs the refund and refused to allow the payment thereof.
*595 Five years later, in July, 1927, plaintiffs wrote to the surplus property division at Brooklyn, New York, requesting allowance of their claim for payment of $10,001.00. The matter was considered by the Eastern Surplus Property Sales Board at Brooklyn under date of August 20,1927, with the result that the said board concurred in the action of the Boston Sales Board on May 19, 1922, in which the refund had been allowed. The approval was made in the language following:
“ The decision of the Boston Sales Board was made on May 19, 1922, and the findings of the board were within the powers vested in sales boards at that time. One of the duties of the sales board was to examine and inquire into all the facts and circumstances connected with a claim and to make adjustments in matters of discrepancies in quantity, condition, or quality of goods delivered or such other conditions involving consideration of fair dealing.”
Following this action the matter was again presented to the Comptroller General for a decision, and on January 23, 1928, the Comptroller General again rejected the claim.
On February 24, 1928, the findings of the Brooklyn Surplus Property Sales Board were approved by the Assistant Secretary of War, in the following language:
“ The Assistant Secretary of War sees no reason for disturbing the findings and recommendation of the Eastern Surplus Property Sales Board which are in accord with the findings and recommendation of the local board of sales control, Boston, Massachusetts, and in accord with the recommendation of the director of sales, the then authorized representative of the Secretary of War, pertaining to the findings and recommendation of the last-named board.”
This suit is not based upon a breach of the contract of sale made in 1920 or the failure of the defendant to deliver to plaintiffs a fair assortment of shoes thereunder. The suit is for the recovery of the sum of $10,001.00, found by the Secretary of War to be due plaintiffs as a reduction and adjustment of the purchase price of the shoes sold to the plaintiffs on the date and in the manner hereinbefore set out.
The sole ground for recovery is that the Secretary of War, pursuant to statutory authority to sell surplus prop *596 erty “ upon sucli terms as may be deemed best,” authorized a refund of $10,001.00 on the purchase price of the shoes sold and delivered to plaintiffs; that the allowance of this refund by the Secretary of War, through proper agencies created by him, amounted to “ a statement of the account ”' between the plaintiffs and the defendant, and upon the account so stated plaintiffs bring this suit.
The defendant asserts that the plaintiffs’ right of action, to recover the amount of the refund authorized to be paid to the plaintiffs by the Secretary of War is barred by the-statute of limitations, plaintiffs’ right of action having accrued to them on May 24, 1922, while the plaintiffs contend their right of action accrued on February 24, 1928, the ■ date on which the Assistant Secretary of War formally approved the findings of the Eastern Surplus Property Sales Board of Brooklyn, New York.
It seems quite clear to us that the plaintiffs’ cause of action on the refund allowed to it by the Secretary of War accrued on May 24, 1922. That is the date upon which plaintiffs accepted the terms of adjustment agreed upon by the local board of sales control at Boston on May 19, 1922, and signed and returned to the said board with their acceptance the voucher for $10,001.00, the amount of such refund.
The local board of sales control at Boston, under the provisions of paragraph 312 of Circular No. 1, issued by the Office of the Quartermaster General under date of January 3, 1922, had the authority to review and make adjustments in all claims arising between the purchasers of surplus war supplies and the War Department:
“312. Local boards of sales control. — (a) There will be-originated by each quartermaster supply officer in charge of a surplus property area a surplus property local board of sales control. Each surplus property local board of sales control will consist of not less than three commissioned officers, designated by the quartermaster supply officer, one ■ of whom shall be the surplus property officer. The surplus property local board of sales control will act as a board of review, approval, and direction with respect to * all sales conducted under the direction of the quartermaster *597 supply officer of the control depot within the following limits:
“ It will pass upon the acceptance of bids and may reject any or all bids or permit bids to be withdrawn where consideration of policies and fair dealings may require.
“ It will make adjustments of all claims arising between the purchaser and its particular control depot in matters of discrepancies in quantity, condition, or quality of goods delivered, or such other conditions involving consideration or fair dealing.
“ The board will make adjustment of claims and authorize the payment of refunds in so far as the law permits, where funds have not been covered into the Treasury.
“(b) To the local board of sales control in the surplus-property division, this office, is reserved the right to determine fixed price on commodities for sale on the market or to a designated purchaser, in accordance with the principles and policies set forth in Article XVIII, Compilation of Supply Circulars and Supply Bulletins, Purchase, Storage, and Traffic Division, General Staff, 1919.”
The plaintiffs contend that because the adjustment of their claim for refund made on May 19, 1922, by the local board of sales control at Boston, the terms of which adjustment were accepted by the plaintiffs, May 24, 1922, was not formally approved by the Secretary of War, such adjustment did not constitute an “ account stated.” It is contended the action of the local board of sales control at Boston amounted merely to a recommendation to the Secretary of War to pay the amount found due and that no liability on the part of the Government to pay it attached until its formal approval by the Secretary, and that consequently no right of action accrued to the plaintiffs at that time.
The Secretary of War had conferred upon the local board of sales control full authority to act for him in making adjustment of all claims arising out of the sales of surplus war supplies made under the various acts of Congress. Therefore the act of the local board of sales control •of Boston, allowing the plaintiffs a refund of $10,001.00, was the act of the Secretary himself.
The findings of the local board of sales control of Boston under the authority vested in it by the provisions of para *598 graph 312 of Circular No. 1, above quoted, amounted, therefore, to more than a mere recommendation to the Secretary of War, as contended by plaintiffs. It was an adjudication of the plaintiffs’ claim for a refund' on the purchase price of the shoes bid upon and purchased from the defendant.
This board was specifically authorized to “make adjustments of all claims arising between the purchaser and its particular control depot in matters of discrepancies in quantity, condition, or quality of goods delivered, or such other conditions involving consideration of fair dealing,” and, “ the board will make adjustments of claims and authorize the payment of refunds in so far as the law permits, where funds have not been covered into the Treasury.”
The authority of a local board of sales control to authorize the payment of refunds in the adjustment of claims was withdrawn in an amended order issued by the office of the Quartermaster General of the War Department on August 23, 1922. By this order paragraph 312 of Circular No. 1, issued on January 3, 1922, is made to read as follows:
“ It [the local board of sales control] will pass upon the acceptance of bids and may reject any or all bids or permit bids to be withdrawn where it is to the manifest interest of the Government to do so.
“ It may make final adjustment of all claims arising between the purchaser and its particular control depot in matters of discrepancies in the identity of quantity of goods delivered, or other conditions involving an improper delivery of the specified goods purchased; but it will not make adjustment in the unit prices or otherwise alter the essential terms of the sale except as to quantity sold.”
Under this amended order the local board of sales control did not have the authority to make adjustment in the unit price or to alter the essential terms of sales, and consequently was without authority to authorize the payment of refunds to purchasers. The board was required in such cases to make an examination of, and to inquire into all the facts and circumstances connected with the matter complained of, and to transmit the testimony and evidence bearing upon the claim or complaint through the office of the Quartermaster *599 General to the office of the Assistant Secretary of War for final action.
Had plaintiffs’ claim for refund been considered by the local board of sales control of Boston after the effective date of this amended order, the action of such board would have been in the nature of a recommendation, as contended by plaintiffs, and would have become final only upon its approval by the Assistant Secretary of War.
On the date the local board of sales control of Boston (May 19, 1922) considered and adjudicated the plaintiffs’ claim by allowing a refund of $10,001.00 such board was authorized to act fully and finally upon said claim. The action of such board when approved by the director of sales, as was done in this case, was a final adjudication of the plaintiffs’ claim for refund so far as the War Department was concerned.
We think, therefore, plaintiffs’ right of action to recover the amount of the refund accrued upon the acceptance by them, May 24, 1922, of the findings of the Boston Local Board of Sales Control on May 19, 1922. The subsequent proceedings before the Eastern Surplus Property Sales Board at Brooklyn, August 19-20, 1927, which proceedings later were approved by the Assistant Secretary of War, February 24, 1928, are wholly immaterial.
The fact that the Comptroller General decided that the Secretary of War did not have the authority to make the refund to plaintiffs the Boston Board of Sales Control had awarded to them does not in any way change the character of the official act of the board in allowing the refund. It was an adjudication of the plaintiffs’ claim for a refund so far as such adjudication could be made by the War Department.
The plaintiffs’ right of action having accrued May 24, 1922, this suit, brought on June 29,1928, more than six years after the accrual of the cause of action, is barred by the statute of limitations. The plaintiffs’ petition is therefore dismissed.
Littleton, Judge; Green, Judge; Graham, Judge; and Booth, Chief Justice, concur.